1

2  IN THE UNITED STATES DISTRICT COURT

3  FOR THE NORTHERN DISTRICT OF CALIFORNIA

4

5  GYORGY MATRAI, Individually and as          Case No. 20-cv-05241-MMC
   Guardian Ad Litem for M.M. (a minor),
6                                              **ORDER GRANTING DEFENDANT'S**
            Plaintiff,                         **MOTION TO DISMISS; DENYING**
7                                              **PLAINTIFF'S MOTION FOR ACCESS**
         v.                                    **RIGHTS UNDER HAGUE**
8                                              **CONVENTION; DISMISSING**
   JONI T. HIRAMOTO, et al.,                   **AMENDED COMPLAINT WITH**
9                                              **PREJUDICE**
            Defendants.
10

11         Before the Court are the following motions: (1) defendant the Honorable Joni T.

12  Hiramoto's ("Judge Hiramoto") Motion to Dismiss, filed September 29, 2020, and (2)

13  plaintiff Gyorgy Matrai's ("Matrai") "Motion for Access Rights Under the Hague

14  Convention," filed November 4, 2020.  Matrai has filed opposition to Judge Hiramoto's

15  motion, to which Judge Hiramoto has replied; Judge Hiramoto has filed opposition to

16  Matrai's motion, to which Matrai has replied.[1]

17         Having considered the papers filed in support of and in opposition to the motions,

18  the Court rules as follows.[2]

19                              **BACKGROUND**

20         In the instant action, Matrai, individually and as guardian ad litem for his minor son

21  M.M., seeks to challenge a "child abduction prevention order" (see Am. Compl. ("AC")

22  ¶ 21) issued by Judge Hiramoto, a "Contra Costa County Superior Court Judge in the

23  Family Division" who is presiding over Matrai's divorce proceedings (see id. ¶ 7).

24  Specifically, Matrai alleges that the child abduction prevention order requires him to "post

25  _____

26         [1] To date, the other named defendant, Michelle Gonzaga Uriarte ("Uriarte"), has
   not appeared in the instant action.

27         [2] By orders filed November 2, 2020, and December 1, 2020, the Court took the
28  matters under submission.

United States District Court
Northern District of California

a $5 million bond as a condition of being able to see his son under supervised visitation" (see id. ¶ 3), and that such requirement has "effectively foreclosed any possibility that [he] would see his son" (see id. ¶ 22).  Matrai further alleges that he filed a "motion to set aside" the order (see id. ¶ 3) and "will continue to be unable to visit his son if Judge Hiramoto denies [his] motion and makes the bond requirement permanent" (see id. ¶ 3).

Based on the foregoing, Matrai filed his initial Complaint, in which he asserted two Counts, titled, respectively, "Declaratory and Injunctive Relief Under 28 U.S.C. §§ 2201 and 2202" and "Injunctive Relief Under 42 U.S.C. § 1983."

Thereafter, Matrai filed a Motion for Preliminary Injunction, seeking the same relief as he sought in his initial Complaint, specifically, an order (1) declaring "any requirement that [he] post a bond in the amount of $5 million—or any other amount that is so far beyond his means to effectively preclude any visitation with his son in perpetuity—would violate [his] and his son's substantive due process rights under the Fourteenth Amendment of the United States Constitution" and (2) "[e]njoining [Judge Hiramoto] from imposing any such bond requirement upon [him]" in his divorce proceedings.  (See Mot. for Prelim. Inj. at 9:26-10:4; see also Compl., Prayer for Relief.)

By order filed August 26, 2020 ("August 26 Order"), the Court denied Matrai's Motion for Preliminary Injunction and ordered Matrai to show cause why the Court should not abstain under the Younger doctrine and dismiss the instant action.

On September 9, 2020, Matrai filed both a Response to the August 26 Order and an Amended Complaint ("AC"), wherein he reasserts Counts I and II, adds M.M's mother, Uriarte, as a defendant, and asserts as Count III a claim titled, "Injunctive Relief Under the Hague Convention and 22 U.S.C. §§ 9001 et seq."  In support of the newly asserted Count, Matrai alleges that, "[a]t the time the divorce was filed, [he] had a right to access (visitation) with M.M. pursuant to [an] agreement with Ms. Uriarte, the Children's Act of 1989 (U.K.)[,] and U.K. common law."  (See AC ¶ 39.)

On September 14, 2020, the Court, in light of Matrai's filing of the AC and addition of Count III therein, discharged its Order to Show Cause.

United States District Court
Northern District of California

**LEGAL STANDARD**

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations."  See id.  Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint and construe them in the light most favorable to the nonmoving party.  See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "Factual allegations must be enough to raise a right to relief above the speculative level[.]"  Twombly, 550 U.S. at 555.  Courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

**DISCUSSION**

A.    **Motion to Dismiss**

In her Motion to Dismiss, Judge Hiramoto argues Counts I through III are subject to dismissal.  The Court considers each Count in turn.

1.    **Count I**

In Count I, Matrai again seeks declaratory and injunctive relief pursuant to 28

U.S.C. §§ 2201 and 2202.

### a.   <u>Younger</u> Abstention

As noted, Count I was asserted in the initial Complaint, and the Court, by its August 26 Order, found <u>Younger</u> abstention as to that complaint was appropriate and ordered Matrai to show cause why the instant action should not be dismissed.

In <u>Younger v. Harris</u>, 401 U.S. 37 (1971), the Supreme Court "espouse[d] a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances," <u>see</u> <u>Middlesex County Ethics Comm. v. Garden State Bar Ass'n</u>, 457 U.S. 423, 431 (1982), and, consistent therewith, <u>Younger</u> abstention is appropriate in civil cases "when the state proceedings: (1) are ongoing, (2) are quasi-criminal enforcement actions or involve a state's interest in enforcing the orders and judgments of its courts, (3) implicate an important state interest, and (4) allow litigants to raise federal challenges," <u>see</u> <u>ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund</u>, 754 F.3d 754, 759 (9th Cir. 2014).  If those "threshold elements" are met, courts then consider "whether the federal action would have the practical effect of enjoining the state proceedings and whether an exception to <u>Younger</u> applies."  <u>See</u> <u>id.</u>

Here, although Matrai concedes the first threshold element is satisfied and does not dispute the instant action would have the practical effect of enjoining the state proceedings, he disagrees that the remaining threshold elements have been satisfied and argues that the "irreparable loss exception" to <u>Younger</u> abstention applies.  (<u>See</u> Opp. to Mot. to Dismiss at 22:16-18.)  The Court addresses the remaining three elements in turn.

### (1)   Second Threshold Element: State's Interest in Enforcing Orders and Judgments of Its Courts

As to the second threshold element, the Court, in its August 26 Order, found that, "[a]lthough the state proceedings Matrai challenges do not constitute a quasi-criminal enforcement action, those proceedings do involve a state's interest in enforcing the orders and judgments of its courts."  (<u>See</u> August 26 Order at 3:15-18 (internal quotation and citation omitted).)

United States District Court
Northern District of California

1    In opposition to Judge Hiramoto's motion, Matrai fails to address this element,

2    and, consequently, fails to identify any reason for the Court to reconsider its prior finding

3    that the second element is satisfied.

4    To the extent Matrai, in his Response to the August 26 Order, addresses the

5    second element, the Court is not persuaded by his arguments therein.  Specifically, in his

6    Response, Matrai contends the "bond order is not an order unique to the domestic

7    relations court's ability to perform its judicial functions" because, according to Matrai, the

8    state court "has other tools at its disposal to prevent the abduction of [his] son."  (See

9    Resp. to August 26 Order at 9:22-24.)  Whether a state court could have issued a

10   different order in place of the order being challenged is not, however, relevant to the

11   determination of whether the second threshold requirement is met.  Rather, the relevant

12   inquiry is whether the challenged order "implicate[s] the process by which a state

13   compel[s] compliance with the judgments of its courts," see Cook v. Harding, 879 F.3d

14   1035, 1041 (9th Cir. 2018) (internal quotation and citation omitted), and, as set forth in

15   the August 26 Order, the bond requirement is such an order (see August 26 Order at

16   3:15-4:16).  Specifically, the "purpose of the bond requirement is . . . to enforce the family

17   court's custodial orders, both by discouraging conduct inconsistent with those

18   determinations and, if necessary, providing a means for reestablishing compliance

19   therein."  (See id. at 3:23-4:2.)[3]

20   Accordingly, the Court finds the second threshold requirement is met.

21   //

22

23   _____

[3] To the extent Matrai contends a finding that this element is satisfied "directly
24   contradict[s] the Ninth Circuit's admonition about blanket Younger abstention whenever a
     parallel domestic relations case is pending" (see Resp. to Order to Show Cause at 9:16-
25   19), the Court disagrees.  Younger abstention as to parallel state domestic relations
     proceedings is limited to challenges to orders issued for the purpose of "enforcing the
26   orders and judgments of [the state's] courts."  See Cook, 879 F.3d at 1040-41 (internal
     quotation and citation omitted); see also Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 13-14
27   & n.12 (1987) (recognizing "State's interest in protecting the authority of the judicial
     system, so that its orders and judgments are not rendered nugatory" (internal quotation
28   and citation omitted)).

United States District Court
Northern District of California

### (2)   Third Threshold Element: Important State Interest

As to the third threshold element, the Court, in its August 26 Order, found the state proceedings Matrai challenges implicate the states' "undeniable interest in family law." (See August 26 Order at 4:17-21 (quoting Cook, 879 F.3d at 1040).)

Matrai, citing Sprint Communications, Inc. v. Jacobs, 571 U.S. 69 (2013) and Cook, argues such interest cannot serve as the sole basis for abstention. As discussed above, however, Matrai, in challenging the bond requirement, challenges the process by which the state court compels compliance with its orders, and, consequently, the state's interest in family law does not, in this instance, serve as the sole reason for abstention. Further, both Sprint and Cook are readily distinguishable on that basis, as neither case, unlike the instant action, involved a challenge to an order issued "uniquely in furtherance of the state courts' ability to perform their judicial functions." See Sprint, 571 U.S. at 78-79 (finding state utility board decision, which plaintiff sought to challenge in both federal and state courts, "did not touch on a state court's ability to perform its judicial functions"); see also Cook, 879 F.3d at 1040-41 (finding plaintiff's state action, wherein plaintiff challenged enforceability of surrogacy agreement and constitutionality of state law governing such agreements, "is not within the category of cases that involve the State's interest in enforcing the orders and judgments of its orders" (internal quotation and citation omitted)).

Accordingly, the Court finds the third threshold requirement is met.

### (3)   Fourth Threshold Element: Availability of Adequate State Forum to Raise Federal Challenges

As to the fourth threshold element, the Court, in its August 26 Order, found "Matrai has an adequate opportunity to present his federal constitutional claims in the state proceedings, including by appealing the superior court's orders." (See August 26 Order at 4:28-5:2.)

In challenging that finding, Matrai contends "other cases within this district have declined to abstain under Younger after finding that family courts are of limited jurisdiction

and are not equipped to rule on claims arising from constitutional due process considerations." (See Opp. to Mot. to Dismiss at 20:11-15 (internal quotation and citation omitted)).

The cases on which Matrai relies in so arguing, however, are readily distinguishable on their facts. In those cases, the plaintiff's federal claims did not "reach to the very heart" of the state court's "core competency." See Brown v. Alexander, No. 13-01451 SC, 2013 WL 6578774, at *6 (N.D. Cal. Dec. 13, 2013) (finding state family and juvenile court proceedings "wholly unrelated to the core" of plaintiffs' federal civil rights case where plaintiff based federal claims on "facts arising long after the family dispute in state court") (internal quotation and citation omitted); Lahey v. Contra Costa Cnty. Dep't of Children & Family Servs., No. C01-1075 MJJ, 2004 WL 2055716, at *1, *12 (N.D. Cal. Sept. 2, 2004) (finding Younger abstention improper where plaintiff's federal claims were based on alleged conspiracy between Department of Children and Family Services and plaintiff's wife); see also LaShawn A. v. Kelly, 990 F.2d 1319, 1323 (D.C. Cir. 1993) (finding proceedings in Family Division of state court not "an appropriate forum" where plaintiffs brought "multi-faceted class-action challenge to the District of Columbia's administration of its entire foster-care system"). Here, by contrast, Matrai seeks to enjoin enforcement of the state court's bond requirement, which requirement falls squarely within that court's core competency.

Matrai next argues that he has not had "any opportunity to challenge the bond order since it was first entered . . .[,] and the earliest the court will consider his challenge, on constitutional grounds or otherwise, will be on January 25, 2021," the date of the hearing on his motion to set aside the bond requirement. (See Opp. to Mot. to Dismiss at 20:18-20.) As Judge Hiramoto points out, however, Matrai fails to demonstrate how he has been prevented from raising in state court, including by appeal, a constitutional challenge to the bond requirement. As noted in the August 26 Order, "only an 'opportunity to present . . . federal claims in the state proceedings' is required" to satisfy this element (see August 26 Order at 4:23-24 (quoting Juidice v. Vail, 430 U.S. 327, 337

1   (1977))), and, indeed, such an opportunity is demonstrated by Matrai's filing, in state

2   court, a motion to set aside the bond requirement.

3        Accordingly, the Court finds the fourth threshold requirement is met.

4             **(4)    Irreparable Harm Exception**

5        As noted, Matrai contends the "irreparable loss exception to the <u>Younger</u> doctrine"

6   applies in the instant action, because, according to Matrai, he and his son "will suffer

7   irreparabl[e] injury so long as the bond order prevents them from seeing one another in

8   violation of their constitutionally protected right to substantive due process." (<u>See</u> Opp. to

9   Mot. to Dismiss at 22:4-7, 22:16-18.)

10       The "irreparable harm exception" to <u>Younger</u> abstention "applies under

11  extraordinary circumstances where the danger of irreparable loss is both great and

12  immediate." <u>See</u> <u>Arevalo v. Hennessy</u>, 882 F.3d 763, 766 (9th Cir. 2018) (internal

13  quotation and citation omitted).

14       Here, the cases to which Matrai cites in arguing the exception applies are readily

15  distinguishable. In two of those cases, the irreparable harm exception was not raised by

16  any party, <u>see</u> <u>World Famous Drinking Emporium, Inc. v. City of Tempe</u>, 820 F.2d 1079,

17  1082-83 (9th Cir. 1987) (mentioning "irreparable loss" exception solely in general

18  discussion of abstention law); <u>Hernandez v. Sessions</u>, 872 F.3d 976, 994 (9th Cir. 2017)

19  (addressing "likelihood of irreparable harm" solely in context of motion for preliminary

20  injunction), and, in the remaining case, the plaintiff therein asserted an irreparable loss of

21  a wholly different nature than the loss asserted in the instant action, <u>see</u> <u>Arevalo</u>, 882

22  F.3d at 766 (finding, "[d]eprivation of physical liberty by detention constitutes irreparable

23  harm"; noting "petitioner ha[d] been incarcerated for over six months without a

24  constitutionally adequate bail hearing"). In sum, Matrai has failed to cite any authority

25  holding the irreparable harm exception applies under circumstances similar to those in

26  the instant action.

27       Accordingly, the Court finds the irreparable harm exception is not applicable.

28  //

United States District Court
Northern District of California

8

### (5)   Conclusion: <u>Younger</u> Abstention

For the reasons set forth above, the Court finds each of the elements of <u>Younger</u> abstention is satisfied and that the irreparable harm exception to <u>Younger</u> abstention does not apply.

Accordingly, Count I is subject to dismissal.

### b.   Anti-Injunction Act

Judge Hiramoto argues Count I is also barred pursuant to the Anti-Injunction Act, which provides, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." <u>See</u> 28 U.S.C. § 2283.

In response, Matrai contends Count I "does not involve an injunction and, thus, would fall outside the purview of the Anti-Injunction Act." (<u>See</u> Opp. to Mot. to Dismiss at 12:14-15.)  The Act, however, "applies to declaratory judgments if those judgments have the same effect as an injunction." <u>See</u> <u>California v. Randtron</u>, 284 F.3d 969, 975 (9th Cir. 2002). Here, as Judge Hiramoto points out, Matrai seeks, as a practical matter, to enjoin the enforcement of the bond requirement (<u>see</u> AC ¶¶ 31-32 (requesting, as to Count I, "a declaratory judgment that precludes . . . Judge Hiramoto from requiring [him] to post a bond," and, if such judgment is granted, "an order enjoining Judge Hiramoto from continuing the $5 million bond or otherwise imposing a bond that will preclude [him] and his son from seeing one another")).

Accordingly, the Court finds Count I is subject to dismissal for the additional reason that it is barred under the Anti-Injunction Act.[4]

### 2.   Count II

In Count II, Matrai again seeks injunctive relief pursuant 42 U.S.C. § 1983.

---

[4] In light of the foregoing findings, the Court does not consider herein Judge Hiramoto's additional arguments in support of dismissal of Count I.

United States District Court
Northern District of California

1    **a.    <u>Younger</u> Abstention**

2    As noted, Count II, like Count I, was asserted in the initial Complaint, and the

3    Court, by its August 26 Order, found <u>Younger</u> abstention was appropriate as to both

4    claims alleged therein.  In response to the instant motion, Matrai raises as to Count II the

5    same arguments he makes as to Count I.

6    Accordingly, for the same reasons as set forth above with respect to Count I, the

7    Court finds abstention under <u>Younger</u> is appropriate as to Count II, and, consequently,

8    such claim likewise is subject to dismissal.

9    **b.    Failure to State a Claim**

10   Judge Hiramoto argues Count II is subject to dismissal for the additional reason

11   that Matrai "cannot bring his § 1983 claim for injunctive relief against [her] pursuant to the

12   plain language of the statute."  (<u>See</u> Mot. to Dismiss at 11:13-14.)

13   Section 1983 creates a cause of action against any person who, acting "under

14   color of" state law, "subjects . . . any citizen of the United States or other person within

15   the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured

16   by the Constitution and laws."  <u>See</u> 42 U.S.C. § 1983.  "[I]n any action brought against a

17   judicial officer for an act or omission taken in such officer's judicial capacity," however,

18   Section 1983 expressly provides that "injunctive relief shall not be granted unless a

19   declaratory decree was violated or declaratory relief was unavailable."  <u>See</u> <u>id.</u>

20   Here, Matrai neither alleges nor argues that Judge Hiramoto issued the bond

21   requirement in violation of a declaratory decree or that declaratory relief was unavailable.

22   Accordingly, the Court finds Count II is subject to dismissal for the additional reason that

23   Matrai fails to state a claim for relief under 42 U.S.C. § 1983.  <u>See</u> <u>Marciano v. White</u>,

24   431 F. App'x 611, 612 (9th Cir. 2011) (affirming dismissal of § 1983 claim for injunctive

25   relief against judicial officer; noting plaintiff "does not claim that a declaratory decree was

26   violated nor is there any indication that declaratory relief is unavailable").[5]

27

28   _____

[5] In light of the foregoing findings, the Court does not consider herein Judge

10

1

### 3.     Count III

In Count III, Matrai seeks an order allowing him to exercise his "rights to access"

M.M. "pursuant to the laws of the United Kingdom, The Hague Convention, and [the

International Child Abduction Remedies Act ("ICARA"),] 22 U.S.C. §§ 9001 *et seq.*"  (See

AC, Prayer for Relief ¶ c.)

The Hague Convention is a multilateral international treaty whose signatories

"[d]esir[e] to protect children internationally from the harmful effects of their wrongful

removal or retention and to establish procedures to ensure their prompt return to the

State of their habitual residence, as well as to secure protection for rights of access."

Oct. 25, 1980, preamble, 19 I.L.M. 1501, 1501.  ICARA "implements the Hague

Convention in the United States" and "vests state and federal courts with concurrent

jurisdiction over claims under the Convention."  See Holder v. Holder, 305 F.3d 854, 860

(9th Cir. 2002).  Under ICARA, "in the case of an action for arrangements for organizing

or securing the effective exercise of rights of access," the petitioner must establish "by a

preponderance of the evidence . . . that the petitioner has such rights."  See 22 U.S.C.

§ 9003(e)(1)(B).

Here, Matrai contends he is "entitled to petition this court to protect his right of

access under the Hague Convention" (see Opp. to Mot. to Dismiss at 9:22-23), and, in

support thereof, alleges (1) he "lived in the United Kingdom when his wife initiated the

divorce," (2) "[a]t that time, the parties had already agreed that [he] would have rights of

visitation to his son," and (3) "UK law gave [him] those visitation rights because of his

status as a parent."  (See id. at 9:18-20.)  Specifically, as to "UK law," Matrai, in alleging

he has "joint parental responsibility for M.M." (see AC ¶ 41), relies on the United

Kingdom's Children's Act of 1989, under which "'parental responsibility' means all the

rights, duties, powers, responsibilities and authority which by law a parent of a child has

in relation to the child and his property" (see AC Ex. 2 (Children's Act of 1989) § 3(1)).

---

Hiramoto's additional arguments in support of dismissal of Count II.

United States District Court
Northern District of California

1   As Judge Hiramoto points out, however, the relevant rights of access that are

2   enforceable under the Hague Convention and ICARA are those provided under the laws

3   of the child's "habitual residence," i.e., "where a child's home was at the time of removal

4   or retention."  See Londono v. Gonzalez, 988 F. Supp. 2d 113, 125, 130 (D. Mass. 2013),

5   aff'd sub nom. Sanchez-Londono v. Gonzalez, 752 F.3d 533 (1st Cir. 2014).  Matrai

6   appears to concede the point, and there is no dispute that M.M.'s habitual residence is in

7   California.  (See Decl. of Elizabeth Francis ¶ 5 (stating, "[t]he English court would not

8   have jurisdiction because the child in question is not 'habitually resident' in England &

9   Wales and none of the other grounds for jurisdiction as set out in Council Regulation (EU)

10   2201/2003 or the 1996 Hague Convention apply").)  Consequently, Matrai fails to state a

11   cognizable claim under the Hague Convention and ICARA.[6]

12   Accordingly, the Court finds Count III is subject to dismissal.[7][8]

13   **4.      Non-Moving Defendant Uriarte**

14   The deficiencies identified above as to Counts I through III are equally applicable

15   to the non-moving defendant, Uriarte, and accordingly, the three Counts in the AC are

16   likewise subject to dismissal as asserted against said additional defendant.  See Silverton

---

[6] The Court notes there is a split among the circuits that have considered the question of whether federal courts have jurisdiction to resolve access claims under ICARA.  Compare Cantor v. Cohen, 442 F.3d 196, 200 (4th Cir. 2005) (finding, under ICARA, "the courts of the United States lack a substantive basis for the resolution of the access claims"), with Ozaltin v. Ozaltin, 708 F.3d 355, 372 (2d Cir. 2013) (holding ICARA "unambiguously creates a federal right of action to secure the effective exercise of rights of access protected under the Hague Convention"), and Taveras v. Taveraz, 477 F.3d 767, 777 n.7 (6th Cir. 2007) (noting ICARA "does provide for judicial remedies for non-custodial parents, namely for rights of access claims").  The Court, however, need not resolve this issue herein because, even assuming federal courts have, under ICARA, jurisdiction to resolve access claims, Matrai, for the reasons discussed above, has failed to state such a claim.

[7] In light of this finding, the Court does not consider herein Judge Hiramoto's additional arguments in support of dismissal of Count III.

[8] To the extent Matrai, in connection with his Reply in support of his Motion for Access Rights, requests the Court dismiss Judge Hiramoto as a defendant to Count III (see Reply in Supp. of Mot. for Access Rights at 2:14-20), such request is DENIED as moot.

1   v. Dep't of Treasury, 644 F.2d 1341, 1345 (9th Cir. 1981) (holding, where court grants

2   motion to dismiss complaint as to one defendant, court may dismiss complaint against

3   non-moving defendant "in a position similar to that of moving defendants").

4       **5.     Conclusion**

5       As set forth above, the Court will dismiss the three Counts asserted in the AC.

6   Further, as to Counts I and II, given Matrai's failure to cure the deficiencies previously

7   identified by the Court and, as to Count IIII, given the undisputed residence of M.M., such

8   dismissal will be without leave to amend.

9   **B.     Motion for Access Rights Under Hague Convention**

10      In his "Motion for Access Rights Under the Hague Convention," Matrai, for

11  essentially the same reasons he asserts in support of Count III, argues he "has rights of

12  access to his son under UK law" (see Mot. for Access Rights at 5:4) and, as with Count

13  III, seeks to "enforce those access rights" under the Hague Convention and ICARA (see

14  id. at 5:10.)

15      Accordingly, for the same reasons set forth as to dismissal of Count III, Matrai's

16  Motion for Access Rights will be denied.

17                              **CONCLUSION**

18      For the reasons stated above:

19      1.      Judge Hiramoto's Motion to Dismiss is hereby GRANTED, and the instant

20  action is hereby DISMISSED with prejudice.

21      2.      Matrai's Motion for Access Rights is hereby DENIED.

22      **IT IS SO ORDERED.**

23

24  Dated: December 14, 2020

25                                          MAXINE M. CHESNEY
                                            United States District Judge
26

27

28